Pierson R. Hildreth, S.
In this accounting proceeding petitioner seeks, among other things, a construction or modification of a settlement agreement dated April 22, 1947 between decedent’s son and decedent’s wife, and also the allowance of an alleged claim by decedent’s wife against his estate based on a promissory note dated November 27, 1940 in the amount of $40,000 made by decedent to a banking institution and allegedly purchased from the banking institution by his wife.
Objections were filed both to the proposed construction or modification of the agreement and to the allowance of the alleged claim. A hearing was held on the. objections, and proofs and testimony presented as to the facts and circumstances existing both prior and subsequent to the date of the note and the date of the agreement.
The decedent died February 23,1946. His will gave his effects to his wife and the entire residue of his estate to his son. As executor it names the son, who qualified and remained such until he died January 14, 1948. The petitioner herein was the attorney for the son as to all matters pertaining to this estate, and has had possession of the books and records of the estate at all times. In the latter part of 1950, some time after the death of the son, the petitioner upon the petition of decedent’s wife was appointed and qualified in this estate as administrator with the will annexed. Decedent’s widow died on November 29, 1955. Her will was admitted to probate in this court, and petitioner and petitioner’s wife were duly appointed as executors of her estate. They are presently acting as such. Petitioner, at the time of the widow’s death and for more than 15 years before acted alone or with others as her financial advisor and from time to time acted as her attorney.
From the proofs and testimony it is clear to the court that the exact nature of and real motivations for some of the financial *179 dealings between decedent and his wife, and some of the estate transactions or arrangements between the son and wife after decedent’s death cannot now be fully or satisfactorily known. The only parties having direct knowledge of many matters were decedent, his son, and his wife, and each is deceased. To a large degree only in the context of their family relationships, status and manner of living can the matters at issue be somewhat explained.
The agreement in question was made April 22, 1947 between decedent’s son and wife. They were the sole parties interested in the estate. For various reasons they desired to make a settlement of the estate matters between themselves. The agreement was arranged and put into written form by petitioner acting for both the son and wife. Both relied on petitioner for information concerning estate affairs. The agreement was clearly made with reference to settling decedent’s estate as shown by the estate books at the time. The books and records which were put in evidence showed that the assets of the estate then consisted of a boat Aloma and a balance on deposit of approximately $23,000. They did not show any other assets. Neither the books and records nor the agreement made any reference to the existence of any claim upon the note interposed against the estate by the widow, or to the fact that decedent had a vested interest in the remainder of certain trusts created under the provisions of the will of his father, Colonel Anthony J. Drexel. Petitioner, although now in the position of speaking for parties whose interests are in conflict, nevertheless is the only person now alive who can even partially explain the circumstances at the time the agreement was made. His recollection is that the parties did not intend by such agreement to carry over to the widow any interest decedent had in such trusts.
In the opinion of the court the agreement did not, nor was it intended to assign or transfer to the wife anything except the remaining assets as then shown by the books. The agreement so provides. The wife so understood. In her petition for the appointment of the petitioner as administrator with the will annexed executed and verified by her on June 21, 1951, in Paragraph numbered “ 12 ” thereof, she indicates that: “ At the time of executing said Settlement Agreement neither your petitioner nor said Anthony J. Drexel, 3rd, was aware of the vested remainder interests of this decedent in the trusts above described, nor did they contemplate that said remainder interests should be included in the assignment to your petitioner under said Settlement Agreement. This is apparent from the recitals in said Settlement Agreement as to the value of the *180 residuary estate (estimated therein as $15,000.00, plus the value of a motor boat and equipment valued at $3,000.00 for Federal Estate Tax), whereas the remainder interests above mentioned were alone worth upwards of $74,000.00. Your petitioner is therefore advised that when said remainder interests come into the possession of the administrator of this estate they will constitute part of the gross estate of this decedent, for which the administrator will be accountable to the estate of Anthony J. Drexel, 3rd as residuary legatee.” Accordingly, the court will not reform this instrument but construes it as not having the effect of assigning to decedent’s wife any interest possessed by the estate of the decedent herein in such trust remainders. The proceeds of any interest of decedent in the trust remainders when received, less appropriate administration expenses, are distributable to the estate of Anthony J. Drexel, 3rd, in accordance with the provisions of the residuary clause of decedent’s will.
As to the alleged claim upon the note, the court is of the opinion that the proofs áre insufficient to establish this as a valid claim against the estate. There is a complete lack of evidence to indicate that decedent at any time between the issuance of the note in 1940 and his death in 1946 had any intimation, much less knowledge that he was indebted to his wife on this note. There is little, if any, evidence that she personally expected or intended him to pay it, or enforce it against him in his lifetime or against his estate after his death. The note is one of a series of renewal notes for a loan or loans originally made several years before 1940. At or about the date of its maturity, without decedent’s knowledge or consent, his wife, acting through the petitioner herein, exchanged her own personal note for decedent’s note. At petitioner’s request the banking institution indorsed an assignment in blank and without recourse on decedent’s note. Decedent was away from, home at the time but petitioner and decedent’s wife knew where he then was. Petitioner admits he could have communicated with decedent and could have made a timely request of him to execute and send back his own renewal note, but petitioner did not do either of these things. Decedent’s note was thereafter kept in the cash box of the petitioner herein and lay there until April of 1960. Petitioner characterizes the transaction as a “ purchase ’ ’ of decedent’s note by decedent’s wife. The evidence indicates that the discount on renewal notes, in the chain of notes of which this note was one, was paid out of a joint account of decedent and his wife from which account both made withdrawals even though the wife replenished the account with her own funds. To *181 what extent the proceeds of the original loans were used for family purposes or for the benefit of one, or both, cannot be shown. From the proofs presented this transaction seems no different from others where the wife made no claim against her husband. From the time this note matured, three months after its date, until her death in 1955, decedent’s wife never made oral or written claim or demand against her husband or anyone else. The evidence strongly suggests she did not know or had forgotten the note was in physical existence. The evidence shows that after her husband’s death she never gave anyone instructions or directions to make a claim on her behalf based on such note. The agreement with her son made no reference to a claim or any note. The estate books did not carry it as a claim or debt. The claim first appears as an item of debt of decedent in the estate tax returns prepared and filed by petitioner. The wife was not furnished with copies thereof, and petitioner does not know whether the son, who signed the Federal return, knew that such a claim was listed therein. There is likewise a serious question as to whether any claim was ever properly presented as a claim against the estate at the instance or request of decedent’s widow, or ever recognized as such by any of the interested parties. The claim based on said note is therefore disallowed.
With respect to the other relief requested in the petition the court finds and rules as foEows :
(a) The settlement agreement dated April 22, 1947, as construed herein shall be deemed, and treated as an account stated between decedent’s son and widow, and as a complete settlement of the widow’s interest in this estate. The decedent’s interest in the trust remainders passes to his son as beneficiary of decedent’s residuary estate. .
(b) The account filed herein, with respect to the receipts and payments by Anthony J. Drexel, 3rd, as executor, to January 14, 1948, the date of his death, as shown therein, and showing a balance then on hand of $3,486.28 is approved and accepted in lieu of an accounting by his administratrix, Helen H. Drexel.
(c°) The prayer for authority to abandon certain deposits in Barclay’s Bank and the Boyal Bank of Canada is academic,.the petitioner, since filing the account and petition herein, having assigned and distributed the claim to such deposits, if any, of this estate to the estate of Marjorie Gr. Drexel, deceased. Such assignments are approved and confirmed.
(d) There is" no necessity upon this intermediate accounting for a direction for petitioner to retain available funds of this estate for the purpose of paying future taxes and expenses which *182 may become lawfully due or payable by this estate. As administrator with the will annexed, petitioner already, as a matter of law, has the right and obligation to do so.
Petitioner is directed to amend and supplement his account herein to bring the same up to date and thereafter to submit a decree upon five days’ notice in accordance herewith.